All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Good morning. We have three cases on the calendar for argument this morning and we'll hear them in the order that they appear. The first case for argument is United States v. Patrick Laverdure, and if counsel for the appellant is ready to proceed, we'll be happy to hear from you. Good morning. May it please the court, my name is Craig Shannon. I represent Patrick Laverdure. I want to start out by letting you know that I made an error. I made a misstatement in my brief and reply brief. I stated that on pages 7, 23, and 48 that count 3 was dismissed. Patrick was charged with three counts, 1, 2, and 3. And I misstated that count 3 on appeal was dismissed. Count 2 was dismissed, not 3. I say that three times in my opening brief, and I say that once in the reply brief on page 17. Thank you. I'm open for some questions, but I think the big burning question here is what the court said in its order denying the petition. On page 10 of the order, it's found at ER 12, it's document 176 in the district court. What the court says is that Patrick failed to allege facts that support an inference. That supports his claim that trial counsel was ineffective for failing to investigate and litigate the FASC or fetal alcohol syndrome disorder defense. And then the court asserts three problems it sees with the petition. First, it says that Patrick didn't tell, didn't allege that he told counsel that he had fetal alcohol syndrome disorder. Second and third, the court criticized Patrick for not alleging that his fetal alcohol syndrome was readily apparent. And third, finally, the court criticized Patrick for not alleging that he told trial counsel that his statement was coerced. Switch the focus from Patrick for a second. Yeah. Hard to blame a defendant for whatever he does or doesn't do. Well, it was me that didn't do it. Okay. But to trial counsel. And whether it's you or any other trial counsel. Okay. Thank you. What is there in this record that would allow somebody to find that trial counsel was ineffective for failing to inquire about fetal alcohol syndrome? Because that's really the issue. Yeah. If counsel wasn't ineffective for failing to inquire about it, then everything else follows from that. How in this record, there's no expert witness that says that's what you typically do. There's no affidavit or declaration that says he showed some obvious effects of this. So tell me what evidence there is that would allow a finder of fact to see a reasonable question about whether counsel was ineffective. Well, the court should look to the facts in the petition, but also the facts in the record. So the court under 28 U.S.C. 2255 sub B allows the court to consider not just the facts in the motion, but also in the record. So let's start with and work backwards, I guess, the PSR at paragraphs 52 and 66. So we've got this pre-sense report writer. He sits down with Patrick and he interviews him. And he does an interview like a lawyer would, hopefully. Sits down and talks to him about the case like a lawyer should, like a lawyer is required to do, investigate it. And so pursuant to a garden variety PSR interview, I'm presuming up in Great Falls, nothing special. The PSR writer discovers that Patrick suffered from fetal alcohol syndrome disorder. Severely diminished his mental and intellectual capacity and abilities. Suffers learning disabilities and attended special education classes. That's PSR paragraphs 52 and 66. I didn't quote it, but... I had a question about that. Did he learn that from Patrick or did he learn that from Patrick's mother? That's a good question. I don't know that. I really don't know. It very well could be the mother. But he learned it. But here's the reason I ask. We're at a post-conviction stage. Do you have some burden of Patrick coming forward in an affidavit or declaration and saying, I told this to the PO? No, I don't believe I do. I looked at that, actually. I'm hoping I'm answering your question. I appreciate it. You are. The rules, I've never done a 2255 petition before. Never have. I read the rules, and the rules don't require an affidavit. They don't even require Patrick to sign off on it. The rules allow for an agent, a lawyer, to sign it. There's nothing, no averments, there's no swearing, criticized for filing a brief affidavit. It's allowed. The form, actually, that's included in the rules governing 2255 petitions, actually, the form that goes to the prison, it allows for a witness to even sign off on it. It doesn't even require Patrick to sign it. I hope I answered your question, but there's nothing in the rules that I could find that require that. The question is, did Patrick tell his, that's the first question, right? Did Patrick tell him? It would be easy if he did. I argue in the brief, it just doesn't seem right. For a client to come forth with, well, I mean, information that may be exonerating, or he might not know, right? He might not know that his FASD will affect him to the point that it might render his confession forced. He might not realize that. I just think it's incumbent upon trial counsel to sit down with the client, talk to him, and ask him questions. Maybe start out with, I think it's elementary to start out with, tell me about this confession. Tell me about it. Kind of like, and I'm going to get to this, what the prosecutor did in trial. It didn't take long for her to get to it, and that's one of the points I'm going to get to in a second. But before we get to trial, we should at least be talking to the client in jail, or wherever he is, and say, this confession's a problem. We should plead. Tell me about it. How did this happen? And then what he discovered was what the prosecutor did in short order, which was that these re-interrogation techniques were used. Promises of leniency, assumption of guilt, not accepting no for an answer, not accepting innocence, not accepting proclaims of innocence. You're not leaving until you say something, anything. If you leave, we're going to hunt you down.  If you tell us what we want to hear, we're going to do you back to the tribes. That was Labrador's language in trial, after just a few minutes of cross. Now, trial counsel hopefully would get there after not too long in the jail cell. And at some point, trial counsel would come to the conclusion that, like the prosecutor did, this doesn't make sense. Explain this to me again. You confessed to three sexual abuse charges involving your nieces, looking at life in prison, and the judge is just going to let you go? How does that make sense? I don't get it. Help me, Patrick. And through that interview, that discussion, it would be obvious, I think, clear, that Patrick wasn't thinking clearly. He wasn't thinking rationally. Things weren't adding up. Mr. Shannon, a lot of this is speculation. If you look at the history of Mr. Labrador, his work history, his demeanor, deportment, in front of the trial judge, his testimony, no one's recognizing this. And you're saying that they should have, as the case law says, maybe not the forms or the rules, but as the case law says, there's a burden here of showing ineffective assistance. We don't have anything in the record from learned counsel saying that would be the standard of practice. To the contrary, we have a defendant acting totally contrary to some mental defect or disease. And at the end of the day, no evidence, and nothing precludes in a 2255 the presentation of evidence of some kind to prove that fetal alcohol syndrome, in all cases, leads to mental defect. If it's a variance, the range of variances, we're basically operating in a vacuum, saying, well, every lawyer should ask these questions. And since we don't have positive answers, he must not have asked them. But that falls short of any burden, doesn't it? Well, I asked for, I'm hoping to answer your question, I appreciate the question, I asked for funds to hire an expert to delve into this and to flesh all that out. To flesh out the degree to which he had FASD, the degree to which it would have been readily apparent, the degree to which it affected the way he answered questions or the way he succumbed to authority. But I was denied that. So I didn't get that. That's a request in the 2255 proceeding, right? Not at the trial. Yeah, I didn't do the trial, so yeah. And I wanted to work backwards, and I was hoping to answer some of Judge Battaglia's concerns, which were, you know, putting evidence in the record so that I could then draft the 2255 petition that made some of these, that fleshed out the FASD. But all I had was FASD, and so I had to go from there. But, you know, I guess back to speculating what counsel is required to ask or what he did or didn't ask, there is a record, actually, and I want to get to it. It's the cross by the prosecutor, and that is the record that establishes what I'm saying. But my burden, as I understood it, was to not present evidence. I asked the court to allow me to do that, and the court said, no, don't need to do that. Don't worry about that. You jump in the gun. Just allege facts, which, if true in italics, don't even worry about whether they're true. Just allege facts that, if true, supports a claim. I didn't make anything up, but Patrick told me what happened, so then I put it in the petition. And the facts that I alleged, if taken as true, support the claim. They support an inference that not only did he have, that he suffered from fidelity syndrome disorder. I made the allegation. If you take that as true, he does. If you take it as true, he does not just that he has it, but that it affected this case like a cancer, from the beginning to the end. And if taken as true, had anyone sat down and just talked to him for a couple minutes, they'd have figured out that the interrogation in that room for two hours with Agent Shmidala was inappropriate, was improper. It wasn't tape recorded, so all we got is Patrick's word. And so, let me get to the prosecutor's cross, and this is the record. We do have a record. I'm not speculating. I'm looking at page 153 of the, I think it's SCR 153. It is. It's prosecutor's cross-exam. And, look, this is not a lot of evidence, but it's something. And what it says here is, and, okay, she says at the very bottom of line 17, an Agent Shmidala and Agent Overby, they had just met you, right? And he answers yes. Well, let me just stop for a second. That's not true. He met Agent Overby a month or so before that. It's in the record. Overby testifies that Overby and three agents held Patrick in a van and interviewed him for 20 minutes before he had to go and work, before Patrick had to get to work. This is a month prior. So, the point is, Patrick is suggestible. You know, let's go on. They don't know your background, correct? What does he say there? Nope. How does he know that? He doesn't know that. And I beg to differ. I think they did know his background by then. Well, they interviewed him a month or two before that. And they don't know your history, right? Nope. Just go along with it. Just go along with the flow. Just go along with authority. Yes, ma'am, whatever you say. Nope. How does he know that? And so, you provided him with lots of details that day that they would not have known, right? Once again, how does he know what they know? He agreed, yeah. He said, just ask me questions. Now, he says that a couple times. I'm not quite done yet with this part, but he just says that a couple times. They just asked me questions. And this court, in Preston, at page 1014, notices, realizes, recognizes that officers, when they interview, when they interrogate, they often interject facts that then is later regurgitated. And Shimendala had him in this room alone, this bare room, for two hours. Then after that two hours, then he puts the tape recorder on, and then Patrick gives this copacetic statement. Let me just finish a couple more questions here. The prosecutor. They asked you questions, but you provided responses, detailed responses, correct? Uh-huh, yes. And they didn't know that information beforehand, right? He just agrees with them, yeah. How does he know what they know? Of course they knew. They'd already talked to MS and SS, and they read the reports, and they knew what the story was. And you were giving them that information, uh-huh. They asked me questions, yes. So, you know, once again, it's that issue in Preston. The questions had facts in there. Yeah, I mean, I'm speculating. Mr. Shimendala, you're now almost six minutes over your time, so I'm going to ask you to wrap up this. We'll certainly give you some time for rebuttal. Thank you. And then finally, okay, thank you very much. Just one minute. I'd like to close on saying, so the PSR writer, the prosecutor, before conviction, figured it out. What she says is, in closing, doesn't make sense. Pages 189 and SCR 189 and 190. She says, doesn't make sense. What is he saying? It's not rational what he said here. What she gets to is, wait, you're telling me that if you told the police what you thought they wanted to hear, they'd let you go? And he said, yeah, I thought they'd do it back to the tribes. Because they told him that they would. Okay, let's hear from the government, and we'll give you some time for rebuttal, okay? Thank you. Okay, Ms. Adams. Good morning, and may it please the court. My name is Cassidy Adams, and I represent the United States in the District of Montana. I'd like to start off by talking about the standard of review, because there's two standards of review at play here. The standard of review is de novo for the denial of the 2255 motion. However, it's an abuse of discretion standard for denying this defendant a hearing, an evidentiary hearing. That's a much more deferential standard, and we believe that's appropriate, particularly in light of the record in this case. I'm going to spend the majority of my time on the fetal alcohol issue. Judge Morris, in his order denying the defendant's 2255 motion, essentially found the defendant did not state a claim. Having fetal alcohol syndrome is not a claim under section 2255. Let me ask you what part of, you know, what we have to do, as your opponent said, is accept all of the factual allegations in the petition as true for purposes of deciding whether an evidentiary hearing is appropriate. And basically, the standard is pretty forgiving. It's essentially you have to accept all of those facts as true, and unless they're just, you know, sort of patently ridiculous in terms of falling short of stating a claim, that's the only scenario in which you can deny the petition without an evidentiary hearing. And so just zero in on what part of that claim do you think, you know, isn't supported by the factual allegations, assuming we take all of them as true. To be clear, the defendant alleged he had, his confession was coerced. That is not a claim that is in front of this court. That claim was denied, and it was found to be procedurally barred, and there was no certificate of appealability granted. So the factual... So what we have before us is an ineffective assistance of trial counsel claim. The assertion is that trial counsel was ineffective in not exploring a potentially meritorious basis for getting the confession excluded, right? That's the allegation, and the defendant does not... And so all I'm asking you to zero in on is what aspect of that claim do you think is not supported, assuming we accept all of the allegations in that petition as true? The defendant does not allege that a reasonably competent attorney would have adopted a defense based on fetal alcohol syndrome. Well, he alleges that. The question is, does he assert facts sufficient to support that allegation? His argument is that a reasonably competent attorney would have discovered it. The question is, what facts does he allege that would give rise to a dispute on that issue? In other words, if he said, I told my lawyer about this and he did nothing, that would, I think, give rise to a need for an evidentiary hearing. So focusing, as Judge Watford asked you to do, on the facts alleged in the petition, what facts does he allege that would give rise to a need for an evidentiary hearing? Judge Hurwitz, we would respectfully agree if you look to the disagreed... It wasn't an agree or disagree. What you're saying, the judge said, well, you never allege it, you told me, and that's fair. There's nothing in that petition that says I told him. What I think your opponent is arguing is that it really doesn't matter. Because he alleged that he had it, and because the PSR supports that, a reasonably competent attorney would have inquired on his own and discovered that. And so, why doesn't that give rise to a need for an evidentiary hearing? In fact, he does not allege that a reasonably competent attorney would have observed that. He does not allege, and that's exactly what Judge Morris found, was that this defendant alleged that he has fetal alcohol syndrome, and that counsel didn't investigate it. But he didn't allege he would have told his attorney if he had asked. He didn't allege that it was obvious to a reasonably competent attorney. And from there, the court can also look at the facts in the record. The record is clear that a reasonably competent attorney would not have known this had the defendant not told them that this was an issue. In the record, the defense attorney asked Mr. Lavender what the circumstances of his confession were. On cross-examination, Mr. Lavender agreed that he was fairly educated, and then also told the prosecutor, oh, and I have attended a semester of community college. He goes on to tell her that he went to the FBI voluntarily, went with the FBI voluntarily. He was totally fine on the day of the interview. He was not forced to make a statement, and his statements were given freely. Furthermore, if you look at the pre-sentence report, it's easy to take out those two statements, but you also have to look at the fact that in paragraph 59 of the pre-sentence report, the defendant reported no medical problems, and he reported that he is in good physical condition. Can I ask you a question? Can I ask you the same question I asked your colleague? As I read the pre-sentence report, it's not clear to me whether the information about fetal alcohol syndrome comes from the mother or from the defendant. Can you tell? I can't, Your Honor, but it does say that he reported no medical problems. I understand, and there's a point where the mother says he was born with this, but I'm trying to figure out whether there's any part of it where he says. I'm not aware of a part of it of where those statements about it came from. The pre-sentence report, probation conducts interviews with lots of individuals involved with the defendant's life. Can I rephrase your colleague's argument a moment and ask you to respond to it? Because it has a little bit of force. He says, look, any competent defense attorney investigates the background of the defendant, and he doesn't say this. I'm saying any competent defense attorney would have talked to the family, and had anyone talked to the family, he would have discovered this fact. Now, let's put aside the second prong of Strickland for a second, whether or not this fact would have reasonably changed the outcome given their testimony. Why is that enough to establish the first prong of Strickland? The question is, why would that not be enough? In this case, you can look at the record, and you can see that it was not reasonably obvious to this defense attorney, based on what his client's testimony was under oath, based on what his client's testimony was in response to his own questions, based on the pre-sentence report, based on the recording of the interview. It would not be reasonably obvious that this would be a defense that you have to adopt. The question is not, could this have been a potential defense? Judge Morris found that it is a potential defense. But is counsel ineffective under the Constitution for not adopting this particular defense? And it's just not there. It's not a defense. I don't think you quite understand the nature of the IAC claim that's being asserted. The choice is between going before a jury, and having the most damning evidence possible presented against you, and having essentially no answer to it, because we saw what happened in the trial. That was supposedly the strategy that trial counsel adopted. Or, it's bringing a motion that potentially excludes that evidence altogether. It's not a defense that you're going to put on at trial. It's a strategy to keep the most damning evidence against you from ever being presented. I can't think of any competent lawyer who, faced with the decision, hey, should I file this motion and keep the jury from hearing this confession altogether? Or should I instead put my client on the stand and have him be destroyed with an inability to explain how he made these incriminating statements? No competent lawyer would choose to put his client on the stand and have that confession come in if they had a basis for keeping it out. So that's why I guess I just don't understand why you're framing it in terms of adopting a defense. There's not even a close call on that. Your Honor, the claim regarding the confession itself and whether counsel was ineffective for not raising the coerced confession as an issue, that claim was denied a certificate of appealability. That was claim number three. But looking at what this counsel knows, an attorney has to have a good faith basis to file a motion and believe that it would succeed. There's nothing in the record that would lead this attorney to believe that this would succeed. And then furthermore, you have to look at the prejudice prong as well. And I would like to remind the court of that. In this case, the court heard from a number of different witnesses. It was not just one witness versus another. There were two 413 witnesses, four allegations of sex assault. Two of them were the alleged victims in this case. And then two more were witnesses who came in and claimed the defendant had sexually assaulted them under similar circumstances. Notwithstanding whether counsel was reasonable or not, which we assert that he was, particularly given the record, that was all very strong evidence. The defendant would have been convicted regardless. Regardless of his confession? You have some strong arguments in this case, but I'm never impressed with the notion that the defendant's confession played no role in his conviction. The confession is pretty damning in this case, isn't it? And other than that, with respect to the crime, all you have is the testimony of a girl who was rather young at the time. The 413 witnesses don't establish guilt. They just go to his defenses. The 413 witnesses, the jury is allowed to use that evidence for any relevant purpose, unlike 404B. So that is very strong evidence, particularly in light of the similar circumstances. These two women allege Mr. Lavater sexually assaulted them while they were asleep. So that is very powerful evidence. Furthermore, I know that my time is short and that we're on Zoom, but I would like to ask the court, when you're making your decision, to go back and look at the case Gonzalez v. Wong, which is a Ninth Circuit case that the government cited in its brief. In that particular case, the court found, this Ninth Circuit found, that there is no per se rule that a defense attorney must get his client's mental health evaluated, that counsel has to conduct reasonable investigations, but there is no rule that in every case you must do some mental health evaluation, even if later on the defendant, as that defendant did, asserted that a mental impairment defense would have served him better. You have to look at what the attorney in this case knew. There is no evidence in the record. He knew this was an issue, and certainly not to the extent that his client is now alleging. And you have to take the defendant's statements that he made under oath and give significant weight to those statements, especially in light of the new statements that are coming up later. He testified under oath, and that has some meaning and some importance. So if there are no further questions, I'll end my argument there. I appreciate the court's time. Thank you, Timothy. Let's put two minutes on the clock for Roberto. He would have had to testify under oath if his confession had been suppressed, number one. Number two, the third party in this case who figured it out was the judge, the court. On page one of SCR 252, document 147, it says, Moreover, Labrador's characteristics may have played a role in his response to questions at trial. Consequently, his allegation that his pretrial statements were involuntary cannot be decided on the existing record. But the court noted, you know, his characteristics, they might have played a role. There's an inference that they did. The facts asserted support that inference. And the court saw it, the PSR writer saw it, the prosecutor figured it out, and she argued it in closing. This doesn't make any sense, and it doesn't unless you factor in FASD or something else that was affecting his way, the way he thought and processed information. And like I said, page 161 of the record, the trial transcript, it's Patrick on cross-examination, answers the questions. The prosecutor put to him, and he's trying to tell her, look, these officers, when they interviewed me, when Shmidala interviewed me, they assumed my guilt. They wouldn't take no for an answer. They promised me leniency. They promised to keep my confession a secret. They promised to send me back to the tribe if I told them what they wanted to hear. You know, these are all the re-interrogation techniques. And the fact that things didn't make sense, trial counsel, if you had just had a cursor interview, would have figured it out. Finally, SS's interview, her trial testimony at SCR 069 through 071, she says, this is count three, he was convicted on count three. Her testimony, I don't know, I don't know, I don't know. Was Patrick ever in the house with you? No. He was convicted on that because of his confession. That's prejudice, all right. Count two, he was convicted on count two, and the prosecutor later acknowledged that there's no evidence to support it. That was dismissed on appeal. Thank you very much. Thank you, counsel. We appreciate the arguments in this case. The case just argued is submitted.
judges: Watford, Hurwitz, Battaglia